Case No. 14-4001

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| TONY HALL, et al. | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) |
| | ) |
| PARSONS KINGHORN HARRIS, et al., | ) |
| | ) |
| Respondents. | ) |

On Interlocutory Appeal from the United States District Court
for the District of Utah

The Honorable Robert J. Shelby

District Court No. 2:12-cv-00771

**BRIEF OF PETITIONERS**
**(ORAL ARGUMENT REQUESTED)**

Respectfully submitted,

MARY ANNE Q. WOOD
STEPHEN Q. WOOD
WOOD BALMFORTH LLC
60 East South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Facsimile: (801) 366-6061
mawood@woodbalmforth.com
swood@woodbalmforth.com

## CORPORATE DISCLOSURE STATEMENT

The entity Petitioners have no parent corporation.  No publicly held corporation owns more than ten percent of the entity Petitioners.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

GLOSSARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . .  viii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxiii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      THE TRUSTEE'S CLAIMS IN THE ADVERSARY PROCEEDING
          ARE MOOT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

         A.    The Trustee's First and Second Causes of Action Are Moot
             Because a Decision Will Have No Effect on the Bankruptcy
             Estate.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

         B.    The Court Can Grant No Relief on the Trustee's Third Cause of
             Action, Because Neither REDCO Nor the Trustee Were Ever
             Entitled to Damages under 11 U.S.C. § 362(k). . . . . . . . . . . . 3

         C.    The Trustee Lost Standing to Bring a Tortious Interference
             Claim When He Sold the Alleged Contracts. . . . . . . . . . . . . 4

         D.    The Court Lacks Jurisdiction over the Trustee's Claims.. . . . . 6

II.    THE PETITIONERS' COUNTERCLAIMS ARE NOT "RELATED" TO THE BANKRUPTCY, AND THE BANKRUPTCY COURT IS THEREFORE WITHOUT JURISDICTION TO HEAR THEM.. . . . 7

III.   IN ANY EVENT, THE DISTRICT COURT ERRED IN HOLDING THAT, AFTER *STERN V. MARSHALL*, THE BANKRUPTCY COURT MAY MAKE DISPOSITIVE RULINGS ON CLAIMS AND COUNTERCLAIMS INVOLVING PRIVATE RIGHTS.. . . . . . . . 12

    A.    Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    The Supreme Court Has Held That Only Article III Courts – Not Bankruptcy Courts – May Enter Final Judgment on Claims Involving Private Rights Which Are Not Necessarily Resolved in the Process of Ruling on a Creditor's Proof of Claim.. . . . 13

    C.    The District Court Erred When it Held That the Bankruptcy Court Could Issue Final Orders on Claims Involving Private Rights, Where the Petitioners Had Filed No Claim in the Bankruptcy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        1.    The Claims in the Adversary Proceeding – and Particularly the Counterclaims – Are Not So "Intricately Intertwined" with the Bankruptcy as to Make *Stern* Inapplicable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        2.    The Purported "Narrowness" of *Stern* Refers to the Fact That Pierce Had Not Challenged the Jurisdiction of the Bankruptcy Court to "Hear" Vickie's Counterclaim, Merely its Jurisdiction to "Determine" It.. . . . . . . . . . . 22

        3.    The District Court's Reliance on Judge Scalia's Concurrence Is Misplaced.  Judge Scalia Would Have Narrowed the Bankruptcy Courts' Jurisdiction, Not *Stern's* Application.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

iv

4. If this Court Reaches the Question, it Should Hold That the Bankruptcy Court Cannot Issue Final Orders Regarding the Private Rights in this Adversary Proceeding.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

REQUEST FOR ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

## Cases

*Arizonans for Official English v. Arizona*, 520 U.S. 43n.22, 117 S. Ct. 1055 137 L. Ed. 2d 170 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491(5th Cir. 2012). . . . . . . . . . . . . . 5

*Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535 (D. Md. 2006). . . . . . . . . . . 5

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 112 S. Ct. 459 , 116 L. Ed. 2d 358 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.*), 2012 WL 112503 (Bankr. D. Del. Jan. 12, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493 , 131 L. Ed. 2d 403 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Crowell v. Benson*, 285 U.S. 22, 52 S. Ct. 285, 76 L. Ed. 598 (1932). . . . . . . . . 26

*DeFunis v. Odegaard*, 416 U.S. 312, 94 S. Ct. 1704 , 40 L. Ed. 2d 164 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

*Field v. Lindell (In re Mortg. Store, Inc.)*, 464 B.R. 421, 2011 WL 5056990 –6 (D. Haw. Oct.5, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Goldstein v. Eby–Brown, Inc.* (In re Universal Mktg., Inc.), 459 B.R. 573 (Bankr. E.D. Pa.2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Heller Ehrman, LLP, v. Arnold & Porter (In re Heller Ehrman, LLP )*, 2011 WL 4542512, at *6 (Bankr. N.D. Cal. Sept. 28, 2011. . . . . . . . . . . . . 25

*In re Buerge*, 11-20325, 2013 WL 5656204 (Bankr. D. Kan. Oct. 15, 2013). . . . . 3

*In re C.W. Min. Co.*, 477 B.R. 176(B.A.P. 10th Cir. 2012). . . . . . . . . . . . . . . . . . 4

*In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084 (10th Cir. 1994). . . . . . . . . . . . . . . 12

*In re Frazin*, 732 F.3d 313 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Gardner*, 913 F.2d 1515 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . 8, 9, 10, 11

*In re Moore*, 302 B.R. 112 (B.A.P. 10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Ortiz*, 665 F.3d 906 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*In re TMG Liquidation Co.*, CA 7:12-629-TMC, 2012 WL 1986526 (D.S.C. June 4, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*JustMed, Inc. v. Bryce (In re Byce)*, 2011 WL 6210938 (D. Idaho Dec.14, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004). . . . . . 11

*Levey v. Hanson's Window & Constr., Inc. (In re Republic Windows & Doors, LLC ),* 460 B.R. 511, 2011 WL 6157342 (Bankr. N.D. Ill. Dec.12, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*McCarthy v. Wells* (*In re El–Atari*), 2011 WL 5828013, at \*3 (E.D.Va. Nov.18, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858 , 73 L. Ed. 2d 598 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013). . . . . . . . . . . . 5

*Paloian v. Am. Express Co* (In re Canopy Fin., Inc.), 464 B.R. 770, 2011 WL 3911082 –4 (N.D. Ill. Sept.1, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Reed v. Linehan (In re Soporex )*, 463 B.R. 344, 2011 WL 5911674 (Bankr. N.D. Tex. Nov.28, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). . . . . . . . . . . . passim

*Utah v. Evans*, 536 U.S. 452, 122 S. Ct. 2191 , 153 L. Ed. 2d 453 (2002). . . . . . . 2

*Vann v. Spak*, 19 F. App'x 668 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174 (10th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## **Statutes**

11 U.S.C. § 362. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 362(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

11 U.S.C.A. § 362(k)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11 U.S.C. § 541(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1292(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 157(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 157(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

28 U.S.C. § 157(b)(2)(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 157(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 157(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

28 U.S.C. § 157(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Article III of the Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## **Other Authorities**

Restatement (Second) of Torts § 766. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## GLOSSARY

CCWH        Cedar City Wind Holdings, LLC.

PKH         Parsons Kinghorn Harris, PC.

SPG         Sustainable Power Group, LLC.

REDCO       Renewable Energy Development Corporation.

## RELATED CASES

There are no prior or contemporaneous appeals related to this case.

## JURISDICTION

This Court has jurisdiction over this interlocutory appeal under 28 U.S.C.

§ 1292(a)(1).  On September 23, 2013, the District Court denied Petitioners'

motion to withdraw the reference of this adversary proceeding, holding, *inter alia*,

that the Bankruptcy Court had authority to issue dispositive orders involving

private rights, notwithstanding contrary language in *Stern v. Marshall*, 131 S. Ct.

2594, 2620, 180 L. Ed. 2d 475 (2011).  Add. 2 at 23-29; Pet. App. at 1835-41.

The Petitioners moved to certify the question of whether, after *Stern*, the

Bankruptcy Court had jurisdiction to decide dispositive motions on claims

involving private rights, noting a significant dispute on this issue, and the fact that

this Court had never ruled on *Stern*'s impact on the authority of the bankruptcy

courts to issue final orders.  Pet. App. at 1843-83.  On November 26, 2013, the

District Court certified its September 23, 2013, Memorandum Decision and Order

for immediate appeal.  Add. 3; Pet. App. at 1907-10.  This Court granted leave to

appeal on December 19, 2013.  Pet. App. at 1911-17.

## ISSUES PRESENTED FOR REVIEW

**ISSUE NO. 1:** Are the Bankruptcy Trustee's claims against the Petitioners

moot where the property giving rise to the claims has been sold "as-is, where-is,

if-is," with no warranty or representation that it was property of the estate, where

damages for violations of the automatic stay are not available to an entity Debtor

under 11 U.S.C. §362(k), where the Trustee lacks standing to pursue the remaining

claim, and where, therefore, the courts can grant no meaning relief?

Preservation of Issue:  Mootness was not raised below.  However, mootness

is jurisdictional.  "[F]ederal courts are without power to decide questions that

cannot affect the rights of litigants in the case before them."  *DeFunis v.*

*Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704, 1705-06, 40 L. Ed. 2d 164 (1974)

(internal quotations omitted). "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 915, 157 L. Ed. 2d 867 (2004).

**ISSUE NO. 2:** Where the counterclaims brought by the Petitioners in the adversary proceeding are not "related" to the bankruptcy proceeding, within the meaning of 28 U.S.C. § 157(a), does the Bankruptcy Court have jurisdiction to hear them?

Preservation of Issue: The issue of the "relatedness" of the non-moot claims was not raised below. However, "relatedness" within the meaning of 28 U.S.C. § 157(a) is a jurisdictional issue. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995). Therefore, it may be raised at any time. *Kontrick*, 540 U.S. at 443.

**ISSUE NO. 3:** Did the District Court err in holding that the Bankruptcy Court has authority to issue dispositive orders on matters involving private rights, where such matters are not necessarily resolved in ruling on a claim in the bankruptcy, and where the Supreme Court has held in *Stern v. Marshall*, 131 S. Ct. 2594, 2620, 180 L. Ed. 2d 475 (2011), that such matters may only be determined by Article III courts?

<u>Preservation of Issue:</u> This issue was raised by the Petitioners in motions to

withdraw the reference.  Pet. App. at 1225-26, 1732-39.  It was decided by the

District Court in its September 23, 2013, Memorandum Decision and Order.

Add. 2 at 23-29; Pet. App. at 1835-41.

## STATEMENT OF THE CASE

Petitioners Tony Hall, Kimberly Ceruti, Ellis-Hall Consultants, LLC, and

Summit Wind Power, LLC, develop wind energy projects.  Mr. Hall is a citizen of

the United Kingdom, the proprietor of the only privately-owned wind farm in the

UK, and an internationally known expert in the field.  Pet. App. at 1254.  Ms.

Ceruti, a Canadian citizen, manages North American projects for Mr. Hall.  Mr.

Hall and Ms. Ceruti own Ellis-Hall.  Ms. Ceruti owns Summit Wind.  *Id.* at 1249.

Four years ago, in June 2010, George Hoffman and Parsons Kinghorn

Harris ("PKH") became Petitioners' Utah counsel.  Pet. App. at 1251.  PKH

represented Petitioners in at least six court proceedings.  *Id.* at 1251-52, 1253.

PKH regularly advised Petitioners on their legal issues, including contracts,

employment matters, taxes, bankruptcy, liability, and the transfer and acquisition

of entities.  *Id.* at 1253.

Debtor Renewable Energy Development Corporation ("REDCO") was a

Utah corporation entirely unconnected with Petitioners.  REDCO also developed

wind energy projects.  Pet. App. at 130.  On December 30, 2011, REDCO filed a Chapter 7 Voluntary Petition in bankruptcy.  *Id.* at 57-59.  None of the Petitioners was a creditor of REDCO, and none of the Petitioners filed a claim in the REDCO bankruptcy.  *Id.* at 72-90, 126-28, 1039-47.

Mr. Hoffman sought and obtained employment as Trustee of the REDCO Chapter 7 estate, with PKH as Trustee's counsel.  Pet. App. at 119-25, 214.  However, Mr. Hoffman knew nothing about wind energy projects and had no understanding of the value of the bankruptcy estate entrusted to him.  So, he exploited his attorney-client relationship with Mr. Hall and Ms. Ceruti to educate himself.  *Id.* at 1254-56.

At Mr. Hoffman's request, Mr. Hall and Ms. Ceruti taught him how alternative energy projects were financed using tax credits and grants.  Pet. App. at 131, 1255.  At Mr. Hoffman's request, Mr. Hall and Ms. Ceruti traveled to Monticello, Utah, to examine a potential wind farm site.  They reported back to Mr. Hoffman, educating him about the value of various locations, based upon meteorological information and wind patterns.  *Id.* at 1255-56.  At Mr. Hoffman's request, Mr. Hall and Ms. Ceruti examined REDCO documentation and explained the importance and value of various agreements.  *Id.* at 1255.

In the process, Mr. Hall and Ms. Ceruti revealed confidential information about their own business processes and trade secrets. They did so because he was their counsel and they trusted him. Pet. App. at 1255.

In addition to asking Mr. Hall and Ms. Ceruti for their help, Mr. Hoffman invited them to bid on assets of the estate. Pet. App. at 731. Thus inducing his clients to become "Potential Bidders," Mr. Hoffman also induced Mr. Hall and Ms. Ceruti to sign Non-Disclosure Agreements in his favor. *See id.* at 517-27. He failed to make any of the disclosures required of an attorney doing business with his clients. *Id.* at 731.

Among the REDCO documents reviewed by Mr. Hall and Ms. Ceruti were twelve purported options to lease parcels of land near Monticello (the "Disputed Options"). From October 23 through November 29, 2011, REDCO had solicited property owners (the "Landowners") to sign the Disputed Options. Pet. App. at 473, 1055. If valid, the Disputed Options would have given REDCO a three-year exclusive option to lease property for use in a wind energy project. *Id.* at 1064-1200.

However, the Disputed Options required REDCO to pay each Landowner $1,000 within 30 days. *See*, *e.g.,* Pet. App. at 1065. REDCO never paid any of the Landowners. *Id.* at 1055. Nor did REDCO record notices of interest against the

subject properties.  *Id.* at 313.  Instead,  immediately after all the 30-day payment periods expired, REDCO filed bankruptcy.

Mr. Hoffman told Ms. Ceruti that the Disputed Options were invalid, not property of the estate, and that neither he nor the prospective buyer of the estate's assets had any interest in them.  Pet. App. at 1255, 1259.  Accordingly, Mr. Hoffman did not include the Disputed Options when, in January 2012, he sought and received an order from the Bankruptcy Court allowing him to sell substantially all of REDCO's assets to an entity called Sustainable Power Group, LLC ("SPG").  *Id.* at 129, 134, 181, 215-20.  SPG had been formed by a group of REDCO insiders on the same day they put REDCO into bankruptcy.  *Id.* at 135, 551, 663.

Also, because the Disputed Options were not property of the estate, Mr. Hoffman opined that Mr. Hall and Ms. Ceruti could and should pursue their own agreements with the Landowners, if they were interested.  Pet. App. at 1259. Following her lawyer's advice, Ms. Ceruti caused Summit Wind to enter into agreements (the "Summit Wind Agreements") with the Landowners.  *Id.* at 1057, 1259.

However, Mr. Hoffman then reversed himself and began asserting that the Disputed Options were enforceable and were property of the REDCO estate.  He sought an extension of time to assume or reject any executory contracts or

xiv

unexpired leases associated with what he called the "Blue Mountain Assets." Pet. App. at 222-26. According to Mr. Hoffman, the Blue Mountain Assets consisted of the Disputed Options and a purported agreement that PacifiCorp would purchase power generated by the Blue Mountain project. *Id.* at 224. On February 28, 2012, Mr. Hoffman sought leave to sell the Blue Mountain Assets. Pet App. at 227-63.

PacifiCorp promptly objected, informing the Bankruptcy Court that the alleged power purchase agreement – like the Disputed Options – does not exist Pet. App. at 264-72.

On March 2, 2012, Mr. Hoffman disclosed for the first time his relationship with Petitioner Ellis-Hall. Pet. App. at 273-75. In his disclosure, Mr. Hoffman falsely stated that PKH had not provided any legal advice related to the Debtor or the Debtor's estate. *Id.* at 275. On March 27, 2012, Mr. Hoffman moved to employ "special counsel" to take action against his – and PKH's – own clients, stating that a "dispute has arisen involving Ellis-Hall Consulting [*sic*], LLC." *Id.* at 286, 346-47.

On April 4, 2012, Mr. Hoffman, through his special counsel, moved for an order to show cause why Tony Hall and Ellis-Hall – along with the unsuspecting Landowners – should not be held in contempt. Pet. App. at 295-310. Mr. Hoffman claimed that the Summit Wind Agreements violated the automatic stay

and were interfering with his proposed sale of the Blue Mountain Assets. *Id.* at 298.

Mr. Hoffman sought and obtained an order requiring all parties to appear and defend themselves in Salt Lake City on April 12, 2012. Pet. App. at 308, 329-32. Most of the Landowners live in Southern Utah, at least 350 miles from Salt Lake City. *See id.* at 331-32. Many are elderly and infirm. *See, e.g., id.* at 380, 382, 396-98, 929. All were unrepresented. *See id.* at 380-82, 391-402, 417-23.

Tony Hall and Ellis-Hall retained new counsel to file an emergency objection. Pet. App. at 311-28, 333-34. First, they pointed out Mr. Hoffman's obvious conflict of interest and his shocking abuse of his clients. *Id.* at 312, 314, 316. Second, they argued that Mr. Hoffman knew that most of the Landowners had neither the health nor the means to travel to Salt Lake City or to hire an attorney to defend them on short notice. Therefore, Mr. Hoffman's treatment of the Landowners was an unconscionable attempt to bully them into submission. *Id.* at 315-16.

Finally – and apparently dispositively – Tony Hall and Ellis-Hall pointed out that Mr. Hoffman had initially agreed that the Disputed Options were invalid and not property of the estate. They argued that Mr. Hoffman was not entitled to simply reverse himself, assume he was correct, and proceed summarily by motion. Pet. App. at 314, 316. The question of whether the Disputed Options were

property of the estate had to be settled in an adversary proceeding. *Id.* at 315. The Bankruptcy Court withdrew and struck its Order to Show Cause. *Id.* at 15.

Mr. Hoffman sought a second extension of time to assume or reject the Disputed Options, Pet. App. at 348-57, and the Landowners began filing *pro se* objections. *Id.* at 380-82, 391-402, 417-23. The Landowners stated, *inter alia*, that they had never been paid by REDCO. Nor had REDCO provided them copies – signed by REDCO or otherwise – of the Disputed Options. *See id.* at 391, 396. Thus, not only had the Landowners not received payment for the Disputed Options, they had not received even a promise of payment. Nor could they have had any knowledge of any alleged contractual obligation to give notice of, or otherwise respond to, breaches by REDCO.

When Mr. Hall and Ellis-Hall objected to a second extension of time, Pet. App. at 403-16, Mr. Hoffman successfully argued that their objection should be struck for lack of standing. He stated, regarding his own clients who had acted on his advice, "The Hall Parties are not creditors of this estate. Their only connection with this estate is their unfortunate attempt to deprive the estate of its valuable property rights in the Lease Option Agreements." *Id.* at 428.

On May 25, 2012, Mr. Hoffman filed a second motion for leave to sell the Blue Mountain Assets. Pet. App. at 474-535. Landowners filed new *pro se* objections. *Id.* at 540-41, 542-43, 544-55, 556-67, 763-85, 786-852, 853-74, 929-

33.  Mr. Hall and Ellis-Hall also objected.  *Id.* at 729-60.  Again, Mr. Hoffman asserted, and the Bankruptcy Court found, that non-creditors Mr. Hall and Ellis-Hall lacked standing.  *Id.* at 878-80, 950.

Mr. Hoffman claimed that the first proposed sale of the Blue Mountain Assets did not close because of the activities of Mr. Hall and Ellis-Hall.  *Id.* at 477.  He admitted that the buyer, Cedar City Wind Holdings, LLC ("CCWH"), had agreed to purchase the Blue Mountain Assets "as is, where is, and if is" for $210,000.  *Id.* at 411, 477-78.  However, he allowed CCWH to walk away from its agreement to buy at that price.  *Id.* at 478.  Instead, he sought and obtained Bankruptcy Court approval of an amended agreement more favorable to CCWH, which allowed it to purchase the Blue Mountain Assets for $105,000.  *Id.* at 479, 934-40.  Then, as shown *infra*, he tried to collect the difference from his clients.

This time, the sale closed.  Pet. App. at 1033, 1036.  CCWH purchased the Disputed Options "as is, where is, and if is," with no representation or warranty that the Disputed Options were part of the REDCO bankruptcy estate.  *Id.* at 512, 965-66.  The Bankruptcy Court made clear that it was making no determination that the Trustee had title to the Blue Mountain Assets, stating,

> [T]he Court is not quieting title to the lease options, but simply authorizing the trustee to sell whatever interest the estate has to – of the estate in the Blue Mountain assets.

> I want that clear here because some – it might be interpreted
> that by the Court's ruling, I'm – I am quieting title and
> guaranteeing title. I'm not. I'm only authorizing the trustee to
> sell whatever he's got as-is, where-is, if is.

*Id.* at 966.

In addition to selling Disputed Options which purport to compete with the interests of his clients, the Petitioners, Mr. Hoffman promised CCWH that he would assist it in obtaining six separate, valid lease options which indisputably belong to Ellis-Hall. Pet. App. at 252, 498, 735. On February 23, 2012, Ellis-Hall had purchased from SPG six valid options to lease property adjacent to property covered by the Summit Wind Agreements. In making this purchase, Ellis-Hall was, again, acting pursuant to Mr. Hoffman's express advice. *Id.* at 733.

But, CCWH wanted Ellis-Hall's newly-purchased options. *Id.* at 734-35. So, at the behest of non-client CCWH, Mr. Hoffman expressly undertook duties adverse to his clients, the Petitioners. Carrying out those duties, Mr. Hoffman tried to convince Petitioners to sell or transfer back the six valid options. Petitioners refused. *Id.* at 735.

On May 28, 2012, Mr. Hoffman brought an adversary proceeding against his clients. Pet. App. at 1052-1200. He filed a Complaint in the Bankruptcy Court against Mr. Hall, Ellis-Hall, Summit Wind, and the Landowners. He sought (1) a declaration that the Disputed Options were valid, enforceable, and part of the

REDCO bankruptcy estate, *id.* at 1058; (2) a declaration that the Summit Wind

Agreements violated the automatic stay and were therefore void, *id.* at 1058-59;

(3) damages for violation of the automatic stay, *id.* at 1059; and (4) damages under

a state law claim for tortious interference with economic relations, *id.* at 1060.

Mr. Hall and Ellis-Hall answered, demanding a jury trial. Pet. App. at 1201-

14. They also moved to withdraw the reference for the adversary proceeding,

based on the exercise of their right to a jury trial, the Bankruptcy Court's lack of

authority to conduct jury trials, and the Bankruptcy Court's lack of authority, as an

Article I court, to adjudicate common law claims such as the Trustee's claim for

tortious interference. *Id.* at 1215-40.

Summit Wind answered separately, also demanding a jury trial. Pet. App.

at. 1241-49. In addition, Summit Wind and Ms. Ceruti brought state law

counterclaims and third-party claims (collectively, the "Counterclaims") against

Mr. Hoffman, PKH, and four other PKH lawyers (the "PKH Parties") based on

violations of duties owed by these attorneys to their clients. *Id.* at 1249-73. The

Counterclaims are for (1) breach of fiduciary duty, *id.* at 1264-65; (2) malpractice,

*id.* at 1265-67; (3) breach of contract, *id.* at 1267-68; (4) tortious interference with

contract and prospective economic advantage, *id.* at 1268-69; (5) unjust

enrichment, *id.* at 1269-70; (6) conversion, *id.* at 1270; and (7) for declarations

that Mr. Hoffman and PKH were conflicted and disqualified from serving as

Trustee and Trustee's counsel, and that the Disputed Options are invalid, *id.* at 1270-71.

Ms. Ceruti and Summit Wind never conceded that the Bankruptcy Court had jurisdiction over the Counterclaims. Rather, in bringing the Counterclaims, Ms. Ceruti and Summit Wind asserted that jurisdiction over the Counterclaims lay in the District Court, not the Bankruptcy Court. Pet. App. at 1250. The Counterclaims were brought in the adversary proceeding only because Ms. Ceruti and Summit Wind believed the PKH Parties might assert that some or all were compulsory counterclaims.

Days after the Counterclaims were filed, the irredeemably conflicted Mr. Hoffman and PKH were replaced as Trustee and Trustee's counsel, respectively. Add. 2 at 17; Pet. App. at 1002-10, 1829.

On August 3, 2012, the Bankruptcy Court granted Mr. Hall's and Ellis-Hall's motion to withdraw the reference. Pet. App. at 1313-15. However, Mr. Hoffman continued the dispute over withdrawal of the reference in the District Court.

Ms. Ceruti and Summit Wind joined the motion to withdraw the reference, asserting that nearly all issues required adjudication by an Article III court, and none of the Petitioners had submitted to the jurisdiction of the Bankruptcy Court. Pet. App. at 1730-43.

On September 23, 2013, the District Court denied the motion to withdraw the reference without prejudice, sending the adversary proceeding back to the Bankruptcy Court unless and until the claims became ready for trial.  Add. 2; Pet. App. at 1813-42.  The District Court held that the Petitioners were entitled to a jury trial on all the Counterclaims, and on all the Trustee's claims except the claim for damages for violation of the automatic stay under 11 U.S.C. § 362(k).  Add. 2 at 13-20; Pet. App. at 1825-32.  The District Court held that all claims and counterclaims other than the claim for damages under 11 U.S.C. § 362(k) involved private rights, not public rights.  Add. 2 at 17-20; Pet. App. at 1829-32.

However, the District Court also held that – despite the Supreme Court's decision in *Stern v. Marshall* – the Bankruptcy Court had constitutional authority to enter final orders on motions disposing of claims or Counterclaims prior to trial.  Add. 2 at 23-29; Pet. App. 1835-41.

The Petitioners moved to certify the question of whether, after *Stern*, the Bankruptcy Court had authority to decide dispositive motions on claims involving private rights.  Pet. App. at 1843-83.  On November 26, 2013, the District Court certified its September 23, 2013, Memorandum Decision and Order for immediate appeal.  Add. 3; Pet. App. at 1907-10.  This Court granted leave to appeal on December 19, 2013.  Pet. App. at 1911-17.

At the time of these rulings, a potentially dispositive motion was pending in the Bankruptcy Court. Therefore, Petitioners asked the District Court to stay proceedings until this appeal could be decided. Pet. App. at 1918-27. The District Court refused. *Id.* at 1951-56.

Two of the individual PKH Parties had answered the Counterclaims with a Rule 11 motion. Pet. App. at 1393-1427. These two PKH lawyers claimed that insufficient facts existed to bring Counterclaims against them. The Rule 11 motion was dispositive in that it sought dismissal of claims as a sanction. *Id.* at 1394.

After an evidentiary hearing on the Rule 11 motion, the Bankruptcy Court ordered briefing on whether proceedings should be stayed pending this appeal. Pet. App. at 1628-33.

On February 10, 2014, the Bankruptcy Court issued Proposed Findings of Fact and Conclusions of Law Re: Motion for Sanctions, recommending that the District Court deny the motion. Pet. App. at 1633-51. In that document, the Bankruptcy Court stated that the Sanction Motion – which dealt with the merits of all Petitioners' Counterclaims against two PKH lawyers, was "only barely related to the bankruptcy case." *Id.* at 1636.

On March 5, 2014, the Bankruptcy Court stayed the adversary proceeding pending a ruling in this appeal. Pet. App. 1709-12. The Bankruptcy Court stated,

*inter alia*, that "the circuit could rule that the entire matter should be tried before the district court, and that's a real possibility." *Id.* at 1963.

## SUMMARY OF ARGUMENT

As the Bankruptcy Court suggested, this Court should rule that the entire adversary proceeding must be tried before the District Court, because the jurisdictional problem here goes beyond the fact that the District Court's Order contravenes *Stern*.

Under *Stern*, the issue is whether Article III allows the Bankruptcy Court to "hear and determine" issues, or whether the Bankruptcy Court may only "hear" them, leaving any "determination" to the Article III courts. In this case, there is no jurisdiction in the Bankruptcy Court at all. The Bankruptcy Court may neither "hear" nor "determine" the claims, for the following reasons.

First, the claims brought by the Trustee are moot. Therefore, jurisdiction lies in no court.

Second, the Counterclaims are so unconnected with bankruptcy law and with the bankruptcy estate that they are not "related" to the bankruptcy case under 28 U.S.C. § 157(a). Therefore, the Counterclaims are entirely outside the jurisdiction of the Bankruptcy Court.

If this Court disagrees with either of the foregoing, the *Stern* question remains.

The District Court erred in holding that the Bankruptcy Court can issue final orders on claims in the adversary proceeding involving private rights. All of the Counterclaims, and all of the Trustee's claims, save one, involve private rights. The Petitioners have filed no claim in the bankruptcy, and there is no way that the claims or Counterclaims will be resolved in the course of distributing the bankruptcy estate. Therefore, the adversary proceeding falls squarely within the Supreme Court's holding in *Stern v. Marshall*, 131 S. Ct. 2594, 2620, 180 L. Ed. 2d 475 (2011), that "[t]he Bankruptcy Court below lack[s] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."

# ARGUMENT

## I.     THE TRUSTEE'S CLAIMS IN THE ADVERSARY PROCEEDING ARE MOOT.

Whatever interest the REDCO bankruptcy estate once had in the Disputed Options, that interest has been sold to CCWH.  Furthermore, CCWH purchased any purported interest "as is, where is, if is," with no warranty or representation that any property rights existed.  CCWH thus expressly assumed responsibility to conduct whatever proceedings are necessary to quiet title in the Disputed Options.

After this sale, all four of the Trustee's claims in the adversary proceeding are moot, and no court has jurisdiction over them.  Claims for a declaratory judgment are moot because a decision will have no effect on the bankruptcy estate. The claim for damages arising from an alleged violation of the automatic stay is moot because the Trustee was never entitled to damages, which may only be awarded to "individual" debtors.  11 U.S.C. § 362(k).  Finally, the claim for tortious interference is moot because the Trustee no longer has standing to bring it.

### A.     The Trustee's First and Second Causes of Action Are Moot Because a Decision Will Have No Effect on the Bankruptcy Estate.

"The starting point for analysis is the familiar proposition that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."  *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704, 1705, 40 L. Ed. 2d 164 (1974) (internal quotations omitted).  Where a court cannot

1

provide relief, the "case or controversy" required by Article III of the Constitution does not exist, and the case is moot. *Id.* at 316, 1705-06. *See also*, *Utah v. Evans*, 536 U.S. 452, 459, 122 S. Ct. 2191, 2197, 153 L. Ed. 2d 453 (2002) ("A lawsuit does not fall within [Article III's] grant of judicial authority unless, among other things, courts have the power to redress the injury the defendant allegedly caused the plaintiff.").

The Trustee's First Cause of Action seeks a declaration "that the Lease Option Agreements are valid and enforceable and are property of the estate pursuant to 11 U.S.C. § 541(a)." Pet. App. at 1058. The Second Cause of Action seeks a declaration that, *inter alia*, the Summit Wind Agreements "are void *ab initio* and of no legal force or effect." *Id.* at 1059.

The Disputed Options have been sold, and are therefore indisputably no longer part of the bankruptcy estate, so that issue is moot. Nor would a ruling on the validity of the Summit Wind Agreements have any effect on the bankruptcy estate. As the District Court explained,

> The option contracts, whether they are valid or not, have already been sold. The reduced price for which CCW purchased the Agreements reflects the fact that the validity of the option contracts was uncertain when they were sold. **The outcome of the declaratory judgment claims will not make the Lease Option Agreements any more or less a part of the bankruptcy estate** . . . .

Add. 2 at 16; Pet. App. at 1828 (emphasis added).  *See also*, *In re Buerge*, 11-20325, 2013 WL 5656204, *4 (Bankr. D. Kan. Oct. 15, 2013) (where stock was no longer property of estate, trustee could not maintain action to void security interest in stock because determination of invalidity would have no effect on estate).

Where neither the Bankruptcy Court nor the District Court could grant meaningful relief on the Trustee's First and Second Causes of Action, and any ruling would have no effect on the REDCO bankruptcy estate, those claims are moot.

### B.    The Court Can Grant No Relief on the Trustee's Third Cause of Action, Because Neither REDCO Nor the Trustee Were Ever Entitled to Damages under 11 U.S.C. § 362(k).

The Trustee's Third Cause of Action seeks actual and punitive damages for "willful and knowing violations of the automatic stay of 11 U.S.C. § 362."  Pet. App. at 1059.  However, the Trustee does not have – and never did have – a claim for damages for violation of the automatic stay.

The automatic stay provision states in relevant part,

> Except as provided in paragraph (2), **an individual** injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C.A. § 362(k)(1) (emphasis added).  Under the plain language of this provision, neither artificial entities nor the trustees of their bankruptcy estates are

entitled to damages for violation of the automatic stay. As the Bankruptcy

Appellate Panel of this Court has held, and this Court has affirmed,

> Based on the well-established precedent of this Court and other
> circuits, and the plain language of § 362(k), the Court
> concludes that a trustee acting on behalf of the estate, which is
> an artificial entity, cannot recover damages under § 362(k) for
> a violation of the automatic stay.

*In re C.W. Min. Co.*, 477 B.R. 176, 194 (B.A.P. 10th Cir. 2012) *aff'd*, 12-4174,

2014 WL 1424526 (10th Cir. Apr. 15, 2014).

"Typically, the relief afforded . . . in automatic stay cases consists of either:

(1) the imposition of the stay, (2) damages for violation of the stay, or

(3) disallowance of any action sought to be taken against the appellant." *In re

Moore*, 302 B.R. 112 (B.A.P. 10th Cir. 2003). None of those remedies is available

in this case. The subject property has been sold and the stay is no longer in effect,

no damages for violation of the stay are available, and no action is being taken

against the estate. Accordingly, where courts "cannot render effective relief" on

this claim, it is moot. *Id.* at *2-3.

### C. The Trustee Lost Standing to Bring a Tortious Interference Claim When He Sold the Alleged Contracts.

"The burden is on the Trustee to establish that he has standing to pursue this

action." *In re Buerge*, WL 5656204 at *4. Furthermore, the Trustee must retain

standing throughout the litigation.  If, as here, he has failed to do so, the action is moot.

"Only parties to the contract or economic relationship have standing to bring a tortious interference claim; third-parties who are affected by the wrongful interference may not recover unless they are intended beneficiaries of the relationship or contract.  *See* Restatement (Second) of Torts § 766 cmt. p ("The person protected by the rule stated in this Section is the specified person with whom the third person had a contract that the actor caused him not to perform." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 540 (D. Md. 2006).  *See also*, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 349 (4th Cir. 2013) (parties may not bring state law tortious interference claims when they are not parties to contracts or economic relationships on which claims are based); *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 1585, 185 L. Ed. 2d 578 (U.S. 2013) (claim properly dismissed for lack of standing where plaintiff was not party to contract and thus cannot assert claim for tortious interference); *Vann v. Spak*, 19 F. App'x 668 (9th Cir. 2001) (dismissal proper where plaintiff was not party to contract and did not have standing to sue for tortious conduct relating to contract).

The Trustee, at one time, stood in the shoes of REDCO, a party to each of the Disputed Options.  However, the Disputed Options have been sold.  If REDCO

had any rights under the Disputed Options, those rights have passed to CCWH. The Trustee has become a stranger to those purported contracts and no longer has standing to assert claims for alleged interference with them.

"Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation." *WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1182 (10th Cir. 2012). Thus, "[m]ootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 1069, 137 L. Ed. 2d 170 (1997) (internal quotations omitted).

While the Trustee was a party to the Disputed Options, he had standing to sue for alleged interference with them. He has now lost standing, and the tortious interference claim is therefore moot.

### D.    The Court Lacks Jurisdiction over the Trustee's Claims.

Because the Trustee's claims are moot, both the Bankruptcy Court and the District Court  are without jurisdiction to adjudicate them. They must be dismissed.

## II. THE PETITIONERS' COUNTERCLAIMS ARE NOT "RELATED" TO THE BANKRUPTCY, AND THE BANKRUPTCY COURT IS THEREFORE WITHOUT JURISDICTION TO HEAR THEM.

Whatever the status of the Trustee's claims in this adversary proceeding, the Bankruptcy Court is entirely without jurisdiction to hear the Petitioners' Counterclaims because they are not "related" to the REDCO bankruptcy, within the meaning of 28 U.S.C. § 157(a).

Petitioners' Counterclaims consist of seven causes of action. Petitioners' First through Sixth Causes of Action are that the PKH Parties (1) breached their fiduciary duties by failing to disclose and remedy conflicts of interest, taking positions adverse to their clients' interests, and misusing clients' confidential information, Pet. App. at 1264-65; (2) committed malpractice by breaching duties owed by attorneys to clients, *id.* at 1265-67; (3) breached their contract to provide legal services to the Petitioners, *id.* at 1267-68; (4) tortiously interfered with Petitioners' contracts and prospective economic advantage arising from the Summit Wind Agreements, *id.* at 1268-69; (5) unjustly enriched themselves by billing the Petitioners for legal fees even as they were breaching duties to the Petitioners and harming the Petitioners, *id.* at 1269-70; and (6) converted the Petitioners' property interests in the Summit Wind Agreements, *id.* at 1270. The Seventh Cause of Action sought declarations that Hoffman and PKH were

conflicted and disqualified from serving as Trustee and Trustee's counsel, and that the Disputed Options are invalid, *id.* at 1270-71.

As the District Court noted, the Petitioners' Seventh Cause of Action is now moot insofar as it seeks a declaration disqualifying Mr. Hoffman and PKH. Mr. Hoffman and PKH have already been replaced as Trustee and Trustee's counsel. Pet. App. at 1829.

The remainder of the Petitioners' Seventh Cause of Action seeks a declaration that the Disputed Options are invalid. The Disputed Options are no longer property of the estate, and "[w]hen property leaves the bankruptcy estate, . . . the bankruptcy court's jurisdiction typically lapses." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990). In addition – just as the Trustee's claims regarding the Disputed Options are now moot because the Disputed Options are no longer property of the estate – so the Petitioners likely cannot litigate the validity of the Disputed Options in an action against the Trustee, who is now a stranger to those alleged agreements.

The remaining claims – the First through Sixth Causes of Action – arise from the PKH Parties' breaches of various duties owed to their clients, the Petitioners. All of those duties arise under state law. All of those duties precede the REDCO bankruptcy and would exist whether the bankruptcy were filed, or not.

The First through Sixth Causes of Action do not arise from or depend upon bankruptcy law in any way. The First through Sixth Causes of Action would have been materially the same if the PKH Parties had undertaken an adverse, conflicting representation in a non-bankruptcy context.  The fact that the PKH Parties' betrayal of their clients occurred, in part, in a bankruptcy proceeding is merely coincidental.

Most important to the issue of "relatedness" under § 157(a), resolution of the First through Sixth Causes of Action will not have the slightest effect upon the REDCO bankruptcy estate.  The Petitioners are not seeking damages from the estate.  The Counterclaims seek redress only from the PKH Parties.  And, because the Counterclaims implicate the PKH Parties' malpractice insurance, and the PKH Parties' insurer is providing a defense.  For these reasons, the Counterclaims are not "related" to the bankruptcy within the meaning of 28 U.S.C. § 157(a), and they may not be referred to the Bankruptcy Court for any part of the proceedings.  The Bankruptcy Court lacks jurisdiction either to hear or decide the Counterclaims.

Congress has vested "limited authority" in bankruptcy courts.  *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 40, 112 S. Ct. 459, 464, 116 L. Ed. 2d 358 (1991).  Thus, "[b]ankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress."  *In re Gardner*, 913 F.2d at 1517.

9

Under 28 U.S.C. §157(a), district courts may refer to the bankruptcy courts "any or all proceedings arising under title 11 or arising in or related to a case under title 11." If this jurisdictional threshold is passed, then, under Section 157(b), the bankruptcy courts may "hear and determine" and "enter appropriate orders and judgments" in any "core proceedings" arising under title 11, or arising in a title 11 case. "Core proceedings are proceedings which have no existence outside of bankruptcy." *In re Gardner*, 913 F.2d at 1518.

If a matter is not a "core" matter, but is merely "related to a case under title 11," a bankruptcy court may "hear" it, but may not "determine" it. Thus, under Section 157(c), absent consent of the parties, a bankruptcy court may "hear" a matter and make proposed findings and conclusions, but only the district court may enter a final order.

However, for a matter to be referred to a bankruptcy court, at all, it must, at a minimum, be "related to" the bankruptcy case. And, "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995). After reviewing the circuit court holdings on the scope of "related to" jurisdiction, the Supreme Court concluded that "whatever test is used, . . . bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor. *Id.* at n.6.

Thus, in *Gardner*, the bankruptcy court held that a state divorce proceeding had divested the debtor, Mr. Gardner, of any interest in certain property and had awarded the property to Mrs. Gardner. 913 F.23d at 1517. The IRS had filed a tax lien against Mr. Gardner's interest in the property. The bankruptcy court held that the divorce decree, by divesting Mr. Gardner of his interest in the property, had extinguished the tax lien. *Id.*

On appeal, this Court held that the bankruptcy court had properly determined that the property was not property of the estate, but that the bankruptcy court had been without jurisdiction over any dispute between the IRS and Mrs. Gardner. *In re Gardner*, 913 F.2d at 1518-19. This Court reasoned, "The test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *Id.* at 1518. Thus, "the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy. *Id.*

When the Bankruptcy Court reviewed the merits of the Counterclaims against two of the PKH Parties, it opined that they were "only barely related to the bankruptcy case." *Id.* at 1636. In fact, as shown above, this "bare relation" is not the type of "relation" which allows the matter to be heard by the Bankruptcy

11

Court.  Resolution of the Counterclaims "will have no effect on the estate of the debtor."  Their resolution will affect only the PKH Parties and their malpractice insurer.  Nor must the new Trustee resolve the Counterclaims to "complete administrative duties."

The Bankruptcy Court thus lacks jurisdiction even to hear the Counterclaims.  They must be heard by the District Court.  This Court should entirely reverse the District Court Order declining to withdraw the reference.

## III.   IN ANY EVENT, THE DISTRICT COURT ERRED IN HOLDING THAT, AFTER *STERN V. MARSHALL*, THE BANKRUPTCY COURT MAY MAKE DISPOSITIVE RULINGS ON CLAIMS AND COUNTERCLAIMS INVOLVING PRIVATE RIGHTS.

<u>Standard of Review:</u> The jurisdiction of the Bankruptcy Court is a question of law which is reviewed *de novo*.  *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1085 (10th Cir. 1994).

### A.     Introduction.

Because the issues in this case are either moot or not sufficiently "related" to the REDCO bankruptcy to allow for any jurisdiction in the bankruptcy court, this Court need not reach the *Stern* issue.  However, were this Court to determine that viable "related" matters remain, the District Court erred in holding that the bankruptcy court may enter final orders.  This Court should reverse that portion of the District Court's Order.  Under *Stern*, the Bankruptcy Court may not enter

12

orders disposing of the Petitioners' Counterclaims, or of any of the Trustee's claims involving private rights, because only an Article III court may do so.

**B.     The Supreme Court Has Held That Only Article III Courts – Not Bankruptcy Courts – May Enter Final Judgment on Claims Involving Private Rights Which Are Not Necessarily Resolved in the Process of Ruling on a Creditor's Proof of Claim.**

In the Bankruptcy Act of 1978 (the "Act"), Congress undertook a comprehensive revision of the bankruptcy laws. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52-53, 102 S. Ct. 2858, 2862, 73 L. Ed. 2d 598 (1982). The Act purported to give bankruptcy judges "jurisdiction over all civil proceedings arising under title 11 or arising in or related to cases under title 11." *Id.* at 54, 2862 (internal citations and emphasis omitted).

The Supreme Court held that this Congressional grant of broad jurisdiction to Article I bankruptcy judges was impermissible under the Constitution, which vests the "judicial Power of the United States" in the independent judiciary established under Article III. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60, 87, 102 S. Ct. 2858, 2866, 2880, 73 L. Ed. 2d 598 (1982). In *Northern Pipeline*, the Debtor had brought claims against a third-party for breach of contract, and misrepresentation. The Supreme Court stated,

> Many of the rights subject to adjudication by the Act's
> bankruptcy courts . . . are not of Congress' creation. Indeed,
> the cases before us, which center upon appellant Northern's
> claim for damages for breach of contract and misrepresentation,

13

> involve a right created by *state* law, a right independent of and
> antecedent to the reorganization petition that conferred
> jurisdiction upon the Bankruptcy Court.  Accordingly,
> Congress' authority to control the manner in which that right is
> adjudicated, through assignment of historically judicial
> functions to a non-Art. III "adjunct," plainly must be deemed at
> a minimum.

*Id.* at 84, 2878.  The Court further stated,

> Our precedents make it clear that the constitutional
> requirements for the exercise of the judicial power must be met
> at all stages of adjudication and not only on appeal, where the
> court is restricted to considerations of law, as well as the nature
> of the case a it has been shaped at the trial level.

*Id.* at 86, 2879 n. 39.

Following *Northern Pipeline*, Congress again undertook to redraft the

bankruptcy laws. The Supreme Court had mentioned its prior approval of the

Federal Magistrates Act, under which some judicial functions are given to

Article I magistrate judges.  *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,

458 U.S. 50, 79, 102 S. Ct. 2858, 2875-76, 73 L. Ed. 2d 598 (1982).  Accordingly,

Congress adopted a scheme somewhat resembling the Federal Magistrates Act.

Congress gave the bankruptcy courts power to "hear and determine" only

"core" bankruptcy matters.  28 U.S.C. § 157(a), (b).  The bankruptcy courts may

not "determine" matters which are "non-core" but "related" to the bankruptcy

unless the parties consent.  Absent such consent, bankruptcy courts may "hear"

non-core but related matters.  But they must then propose findings and conclusions

to the Article III courts, the district courts. Only the Article III courts may "determine" non-core but "related" matters by entering a final order. 28 U.S.C. § (c).

However, in 2011, the Supreme Court held that this division of bankruptcy matters into "core" and "non-core" had not completely solved the problem of Article I bankruptcy courts impinging upon powers reserved to Article III courts. In *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), the debtor was Vickie Lynn Marshall, better known as Anna Nicole Smith. After Vickie filed a petition in bankruptcy, her stepson, Pierce Marshall, filed a proof of claim and a nondischargeability complaint alleging that Vickie had defamed him. Vickie filed a counterclaim, alleging that Pierce had tortiously interfered with the gift she had expected from her late husband, Pierce's father. *Id.* at 2601.

The bankruptcy court entered summary judgment against Pierce on his complaint. Then, the bankruptcy court held a bench trial and entered judgment for Vickie on her counterclaim, awarding her $425,000,000 in damages. *Stern*, 131 S. Ct. at 2601. Pierce challenged the bankruptcy court's authority to enter judgment on Vickie's counterclaim. *Id.* at 2601-2602.

The Supreme Court held that the counterclaim for tortious interference was a "core proceeding" under the plain language of 28 U.S.C. § 157(b)(2)(c)[1], and that Congress had purported to give the bankruptcy court power to enter a final order upon it.  *Stern*, 131 S. Ct. at 2604-05. Nevertheless, the Supreme Court continued, "Although we conclude that § 57(b)(2)(c) permits the Bankruptcy Court to enter final judgment on Vickie's counterclaim, Article III of the Constitution does not."  *Id.* at 2608.

The Court began its analysis by reaffirming the importance of maintaining the "judicial Power" in Article III courts.  *Stern*, 131 S. Ct. at 2609.  The Court then explained  that – while Article I courts can adjudicate "public rights" –  they cannot, as a general matter, adjudicate "private rights."  *Id.* at 2612-2615. Vickie's counterclaim was "a common law cause of action [which] neither derive[d] from nor depend[ed] upon any agency regulatory regime," and was therefore "the most prototypical exercise of judicial power" and was not a "public right."  *Id.* at 2615.

The Supreme Court allowed that, if an otherwise private right were completely resolved in the process of ruling on a proof of claim, then the

---

[1]     28 U.S.C. § 157(b)(2)(c) lists "counterclaims by the estate against persons filing claims against the estate" as among the statutory "core proceedings."

bankruptcy court could issue a final order.  *Stern*, 131 S. Ct. at 2616-18.  But, the

Court concluded,

> Congress may not bypass Article III simply because a
> proceeding may have *some* bearing on a bankruptcy case; the
> question is whether the action at issue stems from the
> bankruptcy itself or would necessarily be resolved in the claims
> allowance process.  Vickie has failed to demonstrate that her
> counterclaim falls within one of the "limited circumstances"
> covered by the public rights exception, particularly given our
> conclusion that, even with respect to matters that arguably fall
> within the scope of the public rights doctrine, the presumption
> is in favor of Art. III courts.

*Id.* at 2618.

The Court then reiterated the importance of maintaining the separation of

powers, and not allowing legislation to "chip away at the authority of the Judicial

Branch.  *Stern*, 131 S. Ct. at 2620.  The Court concluded, "The Bankruptcy Court

below lacked the constitutional authority to enter a final judgment on a state law

counterclaim that is not resolved in the process of ruling on a creditor's proof of

claim."  *Id.*

### C.     The District Court Erred When it Held That the Bankruptcy Court Could Issue Final Orders on Claims Involving Private Rights, Where the Petitioners Had Filed No Claim in the Bankruptcy.

In this case, the District Court properly applied *Stern* and related Supreme

Court authority to hold that all Petitioners' Counterclaims – and all the Trustee's

claims other than the impermissible claim for damages for violation of the

automatic stay – involved private rights, not public rights.  Add. 2 at 17-20; Pet.

App. at 1829-32.  Furthermore, there was no argument that the Counterclaims

could be resolved in any proceeding related to administration of the estate because

Petitioners are not creditors of REDCO.  Petitioners had not filed a claim, the

settlement of which might require resolution of any of the claims in the adversary

proceeding.  Accordingly, the Petitioners' Counterclaims, and most of the

Trustee's claims, fall squarely within the holding of *Stern* requiring that an Article

III court issue any final orders.

Regardless, the District Court held that the Bankruptcy Court had

constitutional authority to enter final orders on motions disposing of claims or

Counterclaims prior to trial.  Add. 2 at 23-29; Pet. App. 1835-41.  The Petitioners

contend that this was error.

### 1.     The Claims in the Adversary Proceeding – and Particularly the Counterclaims – Are Not So "Intricately Intertwined" with the Bankruptcy as to Make *Stern* Inapplicable.

The District Court began its analysis with the proposition that, "even if an

action is more appropriately considered to be a private action for purposes of the

Seventh Amendment analysis, such an action may nevertheless be so intricately

intertwined with the bankruptcy proceeding that the bankruptcy court maintains its

authority to enter a final judgment in that action under Article III."  Add. 2 at 26;

Pet. App. at 1838.

The District Court then attempted to distinguish *Stern* by claiming that the

holding of *Stern* was based on the fact that Vickie's counterclaim was "so

remotely connected to the underlying bankruptcy action."  Add. 2. at 10; Pet. App.

at 1821.  The District Court contrasted the claims in this adversary proceeding,

stating,

> The Trustee's claim for tortious interference and the
> Defendants' counterclaims are clearly based in state law and
> resemble private rights of action. . . . As a result, the
> Defendants may properly demand a jury.  But it is also clear
> that these claims spring directly out of the bankruptcy
> proceeding itself. The Trustee's claims all arise out of conduct
> that allegedly violated the automatic stay, which is a creation of
> bankruptcy law. And the counterclaims relate to the Trustee's
> management of the estate and whether the Trustee maintained
> an appropriate relationship with the Defendants while
> performing these management functions. Even if the claims are
> not themselves public rights, on the facts presented here they
> are closely intertwined with the public bankruptcy scheme. . . .
>
> The court also notes that the claims at issue here are clearly
> distinguishable from the state law counterclaims that Vickie
> brought against Pierce in *Stern*.  Pierce's alleged tortious
> interference with Vickie's inheritance preceded the creation of
> Vickie's bankruptcy estate and any actions taken by the
> bankruptcy court. Her claim against Pierce would have existed
> regardless of whether she sought bankruptcy protection. In
> contrast, all of the claims at issue here arise out of the
> management of the bankruptcy estate and the bankruptcy
> proceedings themselves.

Add. 2. at 27; Pet. App. at 1839.  The District Court then concluded, "Given this

direct relationship to the bankruptcy proceeding, the court interprets *Stern* to allow

the bankruptcy judge to retain authority to enter final judgment on the claims and counterclaims." *Id.*

However, in setting forth its "intertwining" rationale, the District Court improperly confused "intertwined" facts with "intertwined" legal rights and duties.

In *Stern*, the Supreme Court stated,

> In [*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989)] we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the "public rights" exception. We explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." *Id.,* at 54–55, 109 S. Ct. 2782. We reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.,* at 56, 109 S. Ct. 2782. As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.,* at 55, 109 S. Ct. 2782.

131 S. Ct. at 2614.

Here, the duties owed by the PKH Parties and the rights asserted by the Petitioners are entirely unconnected with any "federal regulatory program." Nor are the Petitioners asserting rights "belong[ing] to nor exist[ing] against the

Federal Government."  Any "intertwining" between the facts in Petitioners'

Counterclaims and the REDCO bankruptcy would be relevant to the *Stern* analysis

only if it were necessary to prove those same facts in the course of resolving a

proof a claim.

There is no such "intertwining."  There is no proof of claim to resolve.

There is no pending "public right" matter directly connected with the

administration of the estate in which it is necessary to prove all the facts giving

rise to the Petitioners' Counterclaims or to the Trustee's "private right" claims.

In fact, the Petitioners' Counterclaims in this action are even less

"intertwined" with the bankruptcy than were Vickie's counterclaims in *Stern*.  In

*Stern*, Pierce had filed a claim in the bankruptcy.  Here, the Petitioners have filed

no claim.  Vickie's counterclaims would, if successful, have  augmented the

bankruptcy estate.  The Petitioners' Counterclaims can have absolutely no effect

on the estate.

True, George Hoffman and his associated attorneys at PKH breached their

duties to the Petitioners in the context of a bankruptcy proceeding.  But that is

coincidental.  Their duties to the Petitioners existed prior to the filing of this

bankruptcy.  The breaches could have occurred in any conflicting representation,

and do not depend upon bankruptcy law or upon the existence of a bankruptcy

proceeding. Thus, the District Court's "intertwining" rationale is – not just unsupported by *Stern* – it is in direct opposition to *Stern*.

> **2.    The Purported "Narrowness" of *Stern* Refers to the Fact That Pierce Had Not Challenged the Jurisdiction of the Bankruptcy Court to "Hear" Vickie's Counterclaim, Merely its Jurisdiction to "Determine" It.**

As a second basis for its holding, the District Court, stated,

> Many courts have adopted a much narrower interpretation of *Stern* by pointing to the Supreme Court's own characterization of the breadth of its ruling: "We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a narrow one." *Stern*, 131 S. Ct. at 2620.

Add. 2 at 11; Pet. App. 1823. However, the quoted language in *Stern* is taken out of context. In context, it applied only to the issue of whether the bankruptcy court could still "hear" the matter, even if it could no longer "determine" it.

Responding to Vickie's argument that requiring Article III courts to determine her counterclaim would disrupt the bankruptcy process, the Supreme Court stated,

> [W]e are not convinced that the practical consequences of such limitations on the authority of bankruptcy courts to enter final judgments are as significant as Vickie and the dissent suggest. . . .
>
> . . . As described above, the current bankruptcy system also requires the district court to review *de novo* and enter final

22

judgment on any matters that are "related to" the bankruptcy proceedings, § 157(c)(1), and permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof, § 157(d). **Pierce has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them.** We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one.

131 S. Ct. at 2619-20 (internal citations omitted; emphasis added). Consistent

with the foregoing rationale, the majority of courts applying *Stern* have held that,

if a *Stern* problem exists as to certain claims, only the Article III courts may issue

final orders, but the bankruptcy courts may still submit proposed findings and

conclusions. *See, e.g.*, *In re TMG Liquidation Co.*, CA 7:12-629-TMC, 2012 WL

1986526 (D.S.C. June 4, 2012) ("[T]his court joins the majority of courts that have

since concluded that *Stern* did not eliminate the ability of bankruptcy courts to

issue proposed findings and conclusions of law; *McCarthy v. Wells* (*In re*

*El–Atari*), 2011 WL 5828013, at *3 (E.D.Va. Nov.18, 2011) (holding in core

matters related to a case under title 11 the bankruptcy court retains the authority to

submit proposed findings of fact and conclusions of law to the district court);

*Field v. Lindell (In re Mortg. Store, Inc.),* 464 B.R. 421, 2011 WL 5056990, at

*5–6 (D. Haw. Oct.5, 2011) (holding "that Congress, if faced with the prospect

that bankruptcy courts could not enter final judgments on certain 'core'

proceedings, would have intended them to fall within 28 U.S.C. § 157(c)(1)

granting bankruptcy courts authority to enter findings and recommendations.");

*Paloian v. Am. Express Co (In re Canopy Fin., Inc.),* 464 B.R. 770, 2011 WL

3911082, at *3–4 (N.D. Ill. Sept.1, 2011) (holding "the [*Stern* ] Court at least

implied that the effect of its decision was to 'remove' certain claims from 'core

bankruptcy jurisdiction,' and to relegate them to the category of claims that are

merely 'related to' bankruptcy proceedings and thus subject to being heard, but

not finally decided, by bankruptcy courts."); *JustMed, Inc. v. Bryce (In re Byce),*

2011 WL 6210938, at *4 (D. Idaho Dec.14, 2011) (stating "[a] majority of district

courts considering the issue hold that the bankruptcy courts retain the power to

enter proposed findings and recommendations."); *Levey v. Hanson's Window &*

*Constr., Inc. (In re Republic Windows & Doors, LLC* ), 460 B.R. 511, 2011 WL

6157342 (Bankr.N.D.Ill.Dec.12, 2011) (noting that "[n]othing in [the *Stern* ]

decision can be read to preclude this Court from submitting proposed findings of

fact and conclusions of law to the district court."); *Reed v. Linehan (In re Soporex*

), 463 B.R. 344, 2011 WL 5911674, at *5 (Bankr.N.D.Tex. Nov.28, 2011)

(holding that *"Stern* did not strip the bankruptcy courts of the authority to hear

these types of claims and to propose findings of fact and conclusions of law to the

district court for de novo review."); *Goldstein v. Eby–Brown, Inc. (In re Universal*

*Mktg., Inc.*), 459 B.R. 573, 578 (Bankr.E.D.Pa.2011) (declining to follow Blixseth); *Heller Ehrman, LLP, v. Arnold & Porter (In re Heller Ehrman, LLP* ), 2011 WL 4542512, at *6 (Bankr.N.D.Cal. Sept.28, 2011).

In summary, the "narrowness" to which *Stern* refers is not to its application to various "private rights."  Where such rights exist independently of bankruptcy, they must be determined by Article III courts under *Stern*.  Rather, *Stern* is "narrow" only to the extent that it does not opine upon the authority of bankruptcy courts to "hear" such matters.

### 3. The District Court's Reliance on Judge Scalia's Concurrence Is Misplaced.  Judge Scalia Would Have Narrowed the Bankruptcy Courts' Jurisdiction, Not *Stern's* Application.

The District Court referred to Justice Scalia's concurrence as an additional basis for its ruling, stating, *inter alia*,

> Some courts have additionally supported a narrow reading of *Stern* on the grounds that Justice Scalia, while joining in the judgment, did not adopt the reasoning of the Chief Justice's plurality opinion. *See, e.g.*, *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 2012 WL 112503 (Bankr. D. Del. Jan. 12, 2012) ("[A] majority of the justices did not adopt the rationale of Chief Justice Roberts' opinion, giving impetus to a narrow interpretation.").

Add. 2 at 11 n.5; Pet. App. at 1823 n.5.

This rationale ignores what Justice Scalia actually said in his concurrence. Justice Scalia made clear that his only quarrel with the plurality opinion is that it

cedes too much authority to the Article I bankruptcy courts, not too little.  Justice

Scalia stated, "I agree with the Court's interpretation of our Article III precedents,

and I accordingly join its opinion. I adhere to my view, however, that—our

contrary precedents notwithstanding—a matter of public rights . . . must at a

minimum arise between the government and others . . . ."  *Stern*, 131 S. Ct. at

2620.  He then concluded, "Leaving aside certain adjudications by federal

administrative agencies, which are governed (for better or worse) by our landmark

decision in *Crowell v. Benson,* 285 U.S. 22, 52 S. Ct. 285, 76 L. Ed. 598 (1932), in

my view an Article III judge is required in *all* federal adjudications, unless there is

a firmly established historical practice to the contrary.  *Id.*  (emphasis in original).

Thus, Justice Scalia's concurrence cannot be used to justify leaving more

power to determine "private rights" in the bankruptcy courts.  To the contrary,

Justice Scalia would narrow the scope of the "public rights" exception, thus

requiring Article III courts to determine "private rights" in a greater number of

cases.

### 4. <u>If this Court Reaches the Question, it Should Hold That the Bankruptcy Court Cannot Issue Final Orders Regarding the Private Rights in this Adversary Proceeding.</u>

As previously argued, the Petitioners believe that all courts lack jurisdiction

over the Trustee's claims because they are moot, and that the Bankruptcy Court

lacks jurisdiction over the Counterclaims because they are not "related" to the bankruptcy proceeding, within the meaning of 28 U.S.C. § 157(a).

If the Court disagrees with either conclusion and reaches the *Stern* question, it will be a matter of first impression for this Court. This Court should hold that the private rights implicated in this case must be "determined" by an Article III court, and that the Bankruptcy Court may not, therefore, issue final orders on dispositive motions.

As the Fifth Circuit has observed, "[a]lthough the Court [in *Stern*] stated that its decision was 'narrow,' its reasoning was sweeping." *In re Frazin*, 732 F.3d 313, 318-19 (5th Cir. 2013) (holding that bankruptcy court lacked authority to determine debtor's Deceptive Trade Practices Act claim against attorneys which was not decided in course of ruling on attorneys' fees application). There is simply no principled way to distinguish the private rights at stake in this case from the private rights at stake in *Stern*. They certainly cannot be distinguished because they are more "intertwined" with the bankruptcy case.

The Seventh Circuit examined a similar circumstance in *In re Ortiz*, 665 F.3d 906 (7th Cir. 2011). A medical provider, Aurora Health Care, Inc., had filed proofs of claim in thousands of bankruptcy cases in Wisconsin, and had attached materials disclosing medical treatment information. The debtor in *Ortiz* filed an

27

adversary proceeding against Aurora alleging violation of Wisconsin's privacy statutes.  The bankruptcy court granted summary judgment for Aurora.  *Id.* at 908.

Applying *Stern*, the Seventh Circuit held that the bankruptcy court was without jurisdiction to enter that final order.  The Seventh Circuit rejected Aurora's argument "that the debtors' claims are different than Vickie's counterclaim [in *Stern*] because the debtors' claims go to the heart of the bankruptcy judge's management of its Chapter 13 cases."  *Ortiz*, 665 F.3d at 913.  The Seventh Circuit stated,

> *Stern* reaffirmed that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618. The debtors' action owes its existence to Wisconsin state law and will not necessarily resolve in the claims allowance process. **That the circumstances giving rise to the claims involved procedures in the debtors' bankruptcies is insufficient to bypass Article III's requirements**. *Stern v. Marshall* makes plain that the bankruptcy judge in our cases "exercised the 'judicial Power of the United States' in purporting to resolve and enter final judgment on" the debtors' Wisconsin state-law claims. *Id.* at 2611. We thus hold that the bankruptcy judge lacked authority under Article III to enter final judgments on the disclosure claims.

*Id.* at 914 (bolded emphasis added; italics in original).

Just as the bankruptcy court was without jurisdiction to decide dispositive motions in *Ortiz*, so is the Bankruptcy Court without authority to decide

dispositive motions in this case, and the District Court's contrary holding was error.

## CONCLUSION

This Court should dismiss the Trustee's claims.   This Court should also hold, as the Bankruptcy Court suggested, that, even if the Trustee's claims are not dismissed, this entire matter must be tried in the District Court, because the Counterclaims are not related to the bankruptcy under 28 U.S.C. § 157(a).  This Court should therefore entirely reverse the District Court's Order denying the Petitioners' motions to withdraw the reference.

If the Court declines to do so, the Court should reverse the District Court's holding that the Bankruptcy Court may issue final orders on matters involving private rights.

## REQUEST FOR ORAL ARGUMENT

The issues in this appeal are complex.  At oral argument, counsel can answer any questions the Court may have about the issues, or about the proceedings below, or about matters which the Court may deem important, but which may not have been precisely addressed in the briefing.  Therefore, the Petitioners request oral argument.

RESPECTFULLY SUBMITTED this 6th day of May, 2014.

/s/ Mary Anne Q. Wood
Mary Anne Q. Wood, Utah Bar #3539
Stephen Q. Wood, Utah Bar #12403
WOOD BALMFORTH LLC
60 East South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains 10,622 words.

I relied on my word processor to obtain the count, and it is Corel WordPerfect X4.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

 /s/ Mary Anne Q. Wood
Mary Anne Q. Wood, Utah Bar #3539
Stephen Q. Wood, Utah Bar #12403
WOOD BALMFORTH LLC
60 East South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
*Attorneys for Petitioners*

## CERTIFICATION OF DIGITAL SUBMISSION
## AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing *BRIEF OF PETITIONERS*, as

submitted in Digital Form via the court's ECF system, is an exact copy of the

written document filed with the Clerk and has been scanned for viruses with the

Symantec Endpoint Protection software, Version NIS-20.4.0.40, Virus Definition

File Dated: May 6, 2014, and, according to the program, is free of viruses.  In

addition, I certify that required privacy redactions have been made.


 /s/ Mary Anne Q. Wood
Mary Anne Q. Wood, Utah Bar #3539
Stephen Q. Wood, Utah Bar #12403
WOOD BALMFORTH LLC
60 East South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
*Attorneys for Petitioners*

**ADDENDA**

Addendum 1          28 U.S.C. § 157.  Procedures.

Addendum 2          Memorandum Decision and Order, September 23, 2013.

Addendum 3          Order Certifying Decision for Appeal, November 26,
                    2013.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 6, 2014, I did the following:

1.     Sent to the Clerk via FedEx (a) seven hard copies of this brief and (b) two hard copies of Petitioners' Appendix;

2.     Filed using the ECF filing system an electronically-signed copy of the brief , which was in native PDF format;

3.     Sent one copy of this brief and one copy of Petitioner's Appendix to the following via hand delivery:

Stuart H. Schultz                    David R. Hague
William B. Ingram                    Fabian & Clendenin
Strong & Hanni                       215 South State Street, Suite 1200
3 Triad Center, Suite 500            Salt Lake City, UT 84111-2323
Salt Lake City, UT 84180

/s/ Mary Anne Q. Wood
Mary Anne Q. Wood
Stephen Q. Wood
WOOD BALMFORTH LLC
60 East South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Facsimile: (801) 366-6061
mawood@woodbalmforth.com
swood@woodbalmforth.com
*Attorneys for Petitioners*